UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CATHERINE S. DEBAKKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-11 |
| | ) | (VARLAN/SHIRLEY) |
| HANGER PROSTHETICS & ORTHOTICS | ) | |
| EAST, INC. and MARK G. TURNER, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on plaintiff Catherine S. DeBakker's Motion for Sanctions for Spoliation of Evidence [Doc. 48]. Defendants filed a response [Doc. 56] and plaintiff has filed a reply [Doc. 63]. The motion is ripe for the Court's consideration.

**I.  Background**

Plaintiff filed a Complaint [Doc. 1-1] against defendants in the Circuit Court for Anderson County, Tennessee on November 14, 2007. The case was removed to this Court on January 14, 2008 [Doc. 1]. Pursuant to this Court's orders [Doc. 23, 60], plaintiff filed an Amended Complaint [Doc. 25] and a Second Amended Complaint [Doc. 67]. In her second amended complaint, plaintiff alleges that defendant Hanger, together with its employee, defendant Mark G. Turner, designed, manufactured, fitted, and sold to plaintiff a brace for her left leg [*Id.*, ¶ 4]. She further alleges that she experienced problems with that leg brace [*Id.*, ¶ 5] and that, after making modifications to that leg brace, defendants agreed to provide plaintiff with a new leg brace (the "subject brace") [*Id.*]. Plaintiff further alleges

that she received the subject brace in 2006, and there were problems with the knee locks [*Id.*, ¶ 6]. Plaintiff alleges that defendant Hanger, together with defendant Turner, made some additional modifications to that leg brace as well, and then returned it to her [*Id.*]. Plaintiff finally alleges that, on or about June 24, 2007, the subject brace failed, causing her to fall and sustain permanent injuries, including but not limited to a broken leg between the ankle and knee of her left leg [*Id.*].

Plaintiff filed a motion for sanctions [Doc. 48]. Defendants responded in opposition [Doc. 56] and plaintiff filed a reply [Doc. 63]. Defendants filed a supplement to their response [Doc. 98] and plaintiff filed a response [Doc. 103].

In the motion for sanctions, plaintiff alleges that the subject brace was delivered to her with cam lock joints on or around November 15, 2006 [Doc. 48]. She alleges further that a decision was made to replace the cam lock joints with drop lock joints a few weeks after delivery of the subject brace [*Id.*]. The drop lock joints were made of a lighter metal than the cam lock joints [*Id.*]. Although plaintiff visited defendant Hanger's treatment facility on at least two occasions after November 15, 2006, defendants have been unable to locate any records, other than sign-in sheets, made in connection with these visits [Doc. 56]. These records would allegedly show why certain adjustments were made to the subject brace on these occasions [Doc. 63].

The Court has carefully considered the pending motion, response, reply, and supplements in light of the applicable law. For the reasons set forth herein, plaintiff's motion will be denied.

2

**II.     Analysis**

Plaintiff makes three requests in her motion for sanctions, based upon her claim of spoliation in connection with the missing office notes from November 2006. First, she requests that the Court enter default judgment in her favor on the issue of liability [Doc. 48]. In the alternative, plaintiff requests this Court create a "rebuttable presumption that the design and/or modifications to the subject knee brace that occurred after November 15, 2006 were defective and/or unreasonably dangerous," and "were the cause of [plaintiff's] fall and resultant injuries" [*Id.*]. As a second alternative, plaintiff requests that the Court "instruct the jury in this case that it can conclude that the missing evidence, i.e., the records after November 15, 2006, would be adverse to Hanger and [d]efendant Turner" [*Id.*].

The Court has considered requests for sanctions against alleged spoliators before. In *Smith v. USF Holland, Inc.*, No. 3:07-CV-150, 2009 WL 2170136, at *6 (E.D. Tenn. July 20, 2009) (quoting *Bancorpsouth Bank v. Herter*, No. 04-2420 B, 2009 WL 1596654, at *15 (W.D. Tenn. June 5, 2009)), the Court noted that "at least two district courts in this circuit have held that 'a party seeking an adverse inference'" based on the spoliation of evidence must satisfy three criteria. First, the party seeking the adverse inference must establish "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." *Id.* Second, the party seeking the adverse inference must establish "that the records were destroyed with a culpable state of mind." *Id.* Third, and finally, the party seeking the adverse inference must establish "that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support

3

that claim or defense." *Id.* The trial court is "not required to grant a request for an adverse inference even if all the elements entitling a party to [an] adverse inference have been met." *Smith*, 2009 WL 2170136, at *6.

The Court examines each of these factors below in turn. Before examining these factors, however, the Court must first answer a threshold question: whether any evidence that could have been spoliated actually existed.

### A. Existence of Evidence

In order for evidence to be spoliated, that evidence must first exist. Defendant Hanger admits that plaintiff signed in to defendant Hanger's Oak Ridge office on November 21, 2006 and November 25, 2006 [Doc. 56]. Defendant Hanger maintains, however, that no additional records made in connection with these visits can be located [*Id.*]. As evidence that additional records were generated in connection with these visits, plaintiff points first to the deposition testimony of defendant Turner, the relevant portions of which are reproduced below:

> Dana Pemberton: Where are the notes, the Progress Notes, after 11/15/06?
> Mark G. Turner: I have not seen them.
> Q: Where are they?
> A: I don't know.
> Q: You don't know?
> A: No, ma'am.
> Q: Are there some in existence?
> A: I don't know. I don't recall.
> Q: But if you made adjustments to a brace, are you required to make Progress Notes about it?
> A: Yes.
> Q: Do you think you would have made Progress Notes about it?
> A: Yes.

4

[Doc. 48-1]. Plaintiff also points to the deposition testimony of Ms. Kaia Busch, the Rule 30(b)(6) representative. The relevant portions of that testimony are reproduced below:

> Dana Pemberton: [T]he chart notes from Oak Ridge, do you have any knowledge or any idea where, if they exist, the rest of the chart notes would be?
> Kaia Busch: I have no idea where the rest of the chart notes would be.
> Q: Does Hanger have a policy or a procedure, a written policy or procedure, pertaining to chart notes or patient files and things like that?
> A: Yes, they do.
> Q: I don't expect you to have it committed to memory, but can you tell me generally what it says?
> A: Generally it says that each time a patient is seen that you document the status of the patient, the status of the device, the pathology, if there's been any change in patient history, patient presentation, procedural-clinical procedures that we would be initiating or that have been prescribed, any variations to that.

[Doc. 63-2]. Relevant testimony follows later in the same deposition:

> Dana Pemberton: The policy says accurate and complete clinical documentation shall be kept for every Hanger patient following the procedures below, correct?
> Kaia Busch: Yes.
> Q: All right. And I'm not going to bore you by going through reading all the policies and procedures, but let's flip over to page two. I'm sure that this has been discussed, but it says a good legal assumption to make is the following. If it is not in the record, it did not happen. Correct?
> A: Correct.
> Q: And there's a bunch of stuff, to be fair–
> A: Yes.
> Q: –that's not in this record?
> A: Yes.

[*Id.*]. The "policy" that Ms. Pemberton and Ms. Busch discuss is Hanger's Standard Operating Procedures on Clinical Documentation, which provide that "[a]ccurate and complete clinical documentation shall be kept for every Hanger patient . . . ." [Doc. 63-5].

5

The evidence that plaintiff alleges was spoliated consists of notes taken in connection with her visits to defendant Hanger's facility on November 21, 2006 and November 25, 2006. Plaintiff presumes that such notes exist based largely upon a stated policy requiring that such notes be kept, and upon defendant Turner's admission that he would have made notes on these occasions. While these arguments do not conclusively prove that such notes do or did exist, the Court nevertheless assumes for the purposes of argument that they do exist or did exist at one time.

### B. Control and Duty to Preserve

To obtain an adverse inference as a result of spoliation, the party seeking the adverse inference must establish "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." *Smith*, 2009 WL 2170136, at *6 (quoting *Bancorpsouth Bank*, 2009 WL 1596654, at *15). The Court considers the issues of control and the duty to preserve separately below.

#### 1. Control

Plaintiff argues that defendants had "exclusive control" over the documentation at issue [Doc. 63] and bases this argument primarily on the fact that defendant Hanger's standard operating procedures require that "such documentation shall be kept" [*Id.*]. Defendants argue in response that defendant Turner, "in his duties as an orthotist, did not at any time have access to Hanger['s] . . . computer to change any records pertaining to Ms. DeBakker's file" [Doc. 56]. They argue further that defendant Turner "transferred to California effective May 31, 2007 [*Id.*].

6

The evidence suggests that defendant Hanger, and not defendant Turner, ultimately exercised "control" over the notes at issue. As the treating facility and repository of patient records, defendant Hanger must bear responsibility for maintaining those records. And defendant Hanger's document retention policy confirms their role as the party primarily responsible for maintaining those records. Plaintiff can thus satisfy the "control" element with respect to defendant Hanger, but not with respect to defendant Turner.

2. **Duty to Preserve**

The Court next considers whether the defendants had a duty to preserve the patient records in this case. A party to civil litigation "has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

Plaintiff relies almost exclusively on defendant Hanger's document retention policy in arguing that it effectively put defendant Hanger's employees on notice that all documentation created by its employees would be considered "relevant to litigation" [Doc. 63]. Plaintiff points in particular to the policy's admonitions that progress notes "stand[] as the main support in cases of litigation" and "can often times keep the legal process from proceeding further," and that "any written record [an employee] make[s] in the patient's chart may be the central evidence in a court of law" [Doc. 63-5]. Defendants argue in response that they were not put on notice of the present litigation until December 14, 2007, when they

7

were served with a summons in the case [Doc. 56] and had no obligation to preserve records relevant to the case before that date.

Plaintiff offers no evidence that defendants either knew or should have known that the progress notes would be relevant to this litigation prior to service of the summons on December 14, 2007 and therefore failed to demonstrate that defendants had any duty to preserve the progress notes before that date.[1] *See Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.*, No. 06-CV-13143, 2009 WL 998402, at *2 (E.D. Tenn. Mich. Apr. 14, 2009) (quoting *Clark Constr. Group, Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2006)) ("Any destruction of potentially relevant evidence that occurs before [the duty arises] would be harmless, since the party was unaware of a need to safeguard the evidence."). Contrary to plaintiff's assertions, the mere existence of a document retention policy does not give rise to a duty to preserve every document generated under that policy. The duty to preserve arises only when a party becomes "reasonably aware of the possibility of litigation." *See Goetz*, 531 F.3d at 458 (citing *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)) ("The duty to preserve attach[es] at the time that litigation was reasonably anticipated.").

---

[1]Plaintiff makes only the conclusory argument that the defendants "either destroyed or lost [the records at issue] when they knew or should have known that the records would be the subject of possible legal proceedings" [Doc. 48]. Defendants address the timing issue with more specificity, proposing that "any records missing from Ms. DeBakker's file most likely were misplaced in another patient's chart at the time the records were created and filed" [Doc. 56]. For the reasons discussed *infra*, defendants had no duty to preserve these records at the time the records were created and filed.

8

Because plaintiff cannot demonstrate that defendant Turner exercised "control" over the progress notes, and because she cannot demonstrate that either defendant had a duty to preserve these notes, the Court need not consider the remaining elements of her spoliation claim.

**III. Conclusion**

For the reasons stated herein, plaintiff's Motion for Sanctions for Spoliation of Evidence [Doc. 48] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE