UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CATHERINE S. DEBAKKER, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:08-CV-11 (VARLAN/SHIRLEY) |
| HANGER PROSTHETICS & ORTHOTICS EAST, INC. and MARK G. TURNER, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendants Hanger Prosthetics & Orthotics East, Inc. ("Hanger") and Mark G. Turner's Motion for Partial Summary Judgment [Doc. 45]. Plaintiff filed a response to the motion for partial summary judgment [Doc. 58]. Defendants have filed a reply to that response [Doc. 66]. Defendants have also filed a supplement to their motion for partial summary judgment [Doc. 99]. Plaintiff has filed a response to that supplement [Doc. 102]. Defendants have filed a reply to that response as well [Doc. 105].

The motion for partial summary judgment is now ripe for this Court's consideration.

**I. Background**

Plaintiff filed a complaint against Hanger and Mr. Turner in the Circuit Court for Anderson County, Tennessee [Doc. 1-1] on November 15, 2007. The case was removed to this Court on January 14, 2008 [Doc. 1]. Plaintiff filed an amended complaint [Doc. 25] on January 16, 2009, and a second amended complaint [Doc. 67] on May 29, 2009.

In her second amended complaint, plaintiff alleges as follows: Hanger, together with its employee, Mr. Turner, designed, manufactured, fitted, and sold to plaintiff a new leg brace for her left leg [*Id.*, ¶ 4]. She experienced problems with that new leg brace [*Id.*, ¶ 5]. Hanger and Mr. Turner made modifications and adjustments to that leg brace [*Id.*]. After making those modifications and adjustments, Hanger agreed to provide plaintiff with a new brace for her left leg [*Id.*].

Plaintiff received the new leg brace in 2006, but there were problems with the knee locks on that brace [*Id.*, ¶ 6]. Hanger, together with Mr. Turner, made some additional modifications to the leg brace, and returned it to plaintiff [*Id.*]. On or about June 24, 2007, plaintiff's leg brace failed, causing her to fall and sustain permanent injuries, including but not limited to a broken leg between the ankle and knee of her left leg [*Id.*, ¶ 7].

On the basis of these allegations, plaintiff brings several claims. First, plaintiff claims that Hanger was negligent in failing to adequately and safely design, manufacture, inspect, and/or test the left leg brace before selling and providing it to her [*Id.*, ¶ 10]. Second, plaintiff claims that Mr. Turner was negligent in (1) failing to adequately and safely design, manufacture, inspect, and/or test the left leg brace before selling and providing it to her; in (2) failing to use reasonable care in designing, manufacturing, inspecting, testing, fitting, modifying, and altering her left leg brace; and in (3) failing to adequately instruct and/or warn her as to the brace [*Id.*, ¶ 11]. Additionally, and in the alternative, plaintiff claims that Mr. Turner was negligent in that his actions in designing, manufacturing, inspecting, and

2

testing the brace at issue fell below the applicable standard of professional care in Anderson County, Tennessee or in a similar community [*Id.*].

Plaintiff further claims that Hanger and Mr. Turner are strictly liable in (1) failing to adequately warn plaintiff of the dangerous condition of the leg brace, and in (2) designing, manufacturing, and selling the leg brace in a defective and/or unreasonably dangerous condition as defined by Tenn. Code Ann. §§ 29-28-101 (West 2010), *et seq.* [*Id.*, ¶¶ 12, 13]. Finally, plaintiff claims that Hanger and Mr. Turner violated Tenn. Code Ann. §§ 47-2-101 (West 2010), *et seq.* for breaching the implied warranties of merchantability and fitness for a particular purpose [*Id.*, ¶ 14]. Plaintiff alleges that Hanger is liable for the actions of Mr. Turner under the doctrine of respondeat superior [*Id.*, ¶ 17].

The Court has carefully considered the pending motion, the response, the reply, the supplement, the response to the supplement, and the reply to the response to the supplement, in light of the applicable law. For the reasons that follow, defendants' motion will be denied.

**II.     Standard of Review**

Summary judgment is proper under the Federal Rules of Civil Procedure only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The Court views the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

3

475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The judge does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III.  Analysis**

The question presently before the Court is whether this case may be brought under the general rubric of negligence, strict liability, and breach of warranty, or whether it must be brought under the Tennessee Medical Malpractice Review Board and Claims Act (the "Act"), codified at Tenn. Code Ann. §§ 29-26-115 (West 2010), *et seq.* The answer to this question turns primarily upon whether Mr. Turner, an orthotist, is considered a "health care provider"

4

under the Act.[1] If so, the Act controls, and plaintiff's claims must satisfy the requirements of the Act in order to survive summary judgment. If not, the ordinary requirements apply for bringing claims of negligence, strict liability, and breach of warranty in Tennessee.

To answer this question, the Court considers the applicable statutory and regulatory language, relevant case law, and the arguments in the parties' supplemental briefs.

### A. Statutory and Regulatory Language

A careful parsing of the applicable statutory and regulatory language indicates that the Tennessee legislature does not consider orthotists to be "health care practitioners" for purposes of the Act. Tennessee law characterizes orthotists as "allied health professionals." Tenn. Code Ann. § 63-3-201(16) (West 2010). That characterization is juxtaposed in the same statutory provision with a reference to "health care practitioners," whose prescriptions and clinical assessments orthotists fill and apply in carrying out their own duties. Similarly, Tennessee law defines orthotics as a "science or practice." *Id.* § 63-3-201(15). The remainder of that same statutory provision, however, indicates that orthotists only operate under orders from a "licensed health care practitioner." *Id.* The statutory language is thus explicit in exempting orthotists from the category of "health care practitioners."

The applicable regulations further indicate that a licensed orthotist may "provide information or demonstration regarding the proper use and care" of an orthosis device, and

---

[1] The Court notes that the applicable statutory language, and the parties' briefs, make reference to "health care providers" and "health care practitioners," although no clear distinction is drawn between these terms. The Court thus uses these terms interchangeably.

may "make adjustments to the device as needed." Tenn. Comp. R. & Regs. 1155-04-.04. Critically, however, the "scope of practice of a licensed orthotist . . . does not include the right to diagnose a medical problem or condition," or the "right to give medical advice as to the nature, cause, or treatment for the problem or condition for which the orthosis . . . device is being dispensed." *Id.* In medical relationships like the one at issue in this case, the treating physician diagnoses the medical condition and provides medical advice to the patient. The orthotist, by contrast, merely carries out the medical orders of the treating physician. Carrying out those orders does not transform the orthotist into a "health care practitioner" within the meaning of the Act.[2]

The Court is not persuaded by defendants' arguments to the contrary. In support of their argument that orthotists are health care providers, defendants first point to the definitions section of Tennessee's original medical malpractice act. Prior to its repeal in 1985, this section provided that:

> "Healthcare provider" includes but is not limited to physicians (including osteopaths), dentists, clinical psychologists, pharmacists, optometrists, podiatrists, registered nurses, physicians' assistants, chiropractors, physical therapists, nurse anesthetists, emergency medical technicians, hospitals, nursing homes and extended care facilities . . . .

Tenn. Code Ann. § 29-26-102(4) (repealed by Acts of 1985, Ch. 184, § 4). Although this section does not mention "orthotists" by name, defendants contend that Tennessee courts

---

[2]Nor does it, as explained *infra* Part III.B, bear a "substantial relationship" to the rendition of medical treatment as that phrase is used in *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636 (Tenn. 2003), such that an orthotist, while not a "health care practitioner," would nevertheless be covered by the Act.

6

have interpreted the section expansively, and that the Tennessee legislature intended this language to encompass orthotists.

The Court is skeptical of defendants' reliance upon statutory language repealed twenty-five years ago to interpret the remaining provisions of the Act as they apply today.[3] Even assuming this language does apply, however, it is telling that orthotists are not included among those specifically identified in the statute as "healthcare providers," despite the specific enumeration of so many other professions in the statute. While the statute does not set out an exhaustive list of healthcare providers, it is nevertheless plain that the mere application of this provision alone would be insufficient grounds upon which to establish that the Tennessee legislature considered orthotists to be health care providers under the Act.

Recognizing this, defendants next contend that the Act "broadly encompasses many more individuals than just physicians" [Doc. 46]. Relying on *Gunter*, defendants argue that "[w]hen a plaintiff's claim is for injuries resulting from negligent medical treatment, the claim sounds in medical malpractice." *Gunter*, 121 S.W.3d at 640. Defendants argue further that "when a claim alleges negligent conduct which constitutes or bears a substantial

---

[3]The Court notes defendants' invocation of *Gunter v. Lab. Corp. of Am.*, No. M2002-00600-COA-R3-CV, 2002 WL 31190926, at *2 (Tenn. Ct. App. Oct. 3, 2002) for the proposition that "[t]hese repealed sections must be looked to in order to determine the legislative intent behind the passage of the unrepealed sections of the Act." The Court cautions that this language stems from a 1989 Tennessee Court of Appeals case, the underlying events of which took place in 1978. *See Burris v. Hosp. Corp. of Am.*, 773 S.W.2d 932, 934 (Tenn. Ct. App. 1989). In *Burris*, it made sense to examine statutory provisions that were in effect when the events occurred, but that had been repealed by the time the appellate panel reviewed the case. It makes less sense to do so in this case, given that the underlying events took place well after the repeal of the statutory provisions defendants cite.

7

relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable." *Id.* at 641.

Contrary to defendants' argument, however, the allegedly negligent conduct in this case does not bear a "substantial relationship" to the rendition of medical treatment by a medical professional. As *Gunter* explained, "the medical malpractice statute may extend to acts of non-physicians, such as nurses, when they are involved in the medical treatment of a patient." *Id.* at 640. But the *Gunter* court was careful to note that "not all cases involving health or medical entities sound in medical malpractice." *Id.* And, significantly, "[g]iv[ing] medical advice as to the . . . treatment for the problem or condition for which the orthosis . . . device is being dispensed" is precisely what orthotists are prevented from doing under the regulations. Tenn. Comp. R. & Regs. 1155-04-.04.

Nor can the role of an orthotist be equated with that of an attending nurse, as the defendants suggest. Defendants cite to several unpublished Tennessee cases subjecting claims against attending nurses to the requirements of the Act. *See Age v. HCA Health Servs. of Tenn., Inc.*, No. M2001-01286-COA-R3-CV, 2002 WL 1255531, at *2 (Tenn. Ct. App. June 7, 2002) (plaintiff injured by nurse who was moving plaintiff onto a table following surgery); *Cooksey v. HCA Health Servs. of Tenn., Inc.*, No. M2001-00303-COA-R3-CV, 2001 WL 1328539, at *1 (Tenn. Ct. App. Oct. 30, 2001) (same); *McBee v. HCA Health Servs. of Tenn., Inc.*, No. M2000-00271-COA-R3-CV, 2000 WL 1533000, at *1 (Tenn. Ct. App. Oct. 18, 2000) (plaintiff injured when attending nurse permitted plaintiff to ambulate in a hospital two days after surgery without assistance); *Graniger v. Methodist Hosp.*

8

*Healthcare Sys., Inc.*, No. 02A01-9309-CV-00201, 1994 WL 496781 (Tenn. Ct. App. Sept. 9, 1994) (plaintiff injured when a physician and an attending nurse failed to assist plaintiff in dismounting from an examination table). Defendants argue that, like the nurses in these cases, Mr. Turner possesses "specialized training and knowledge" "not within the ken of ordinary laypersons" such that he should be considered a health care provider for purposes of the Act.

Defendants' comparison of the orthotist's role to that of the nurses' role in these cases is inapposite. In the first place–to borrow defendants' own argument–the repealed sections of the Act specifically recognize "registered nurses" and "physicians' assistants" as covered categories of health care providers. It is therefore unsurprising that claims against them would be subject to the terms of the Act. Moreover, the mere fact that a case involves medical personnel with specialized training and knowledge beyond that of normal laypersons, or that the case requires expert testimony, does not automatically transform the case into one that must be litigated under the Act. *See Estate of Doe v. Vanderbilt Univ., Inc.*, 958 S.W.2d 117, 123 (Tenn. Ct. App. May 30, 1997) ("[T]he need for expert testimony does not always signify medical malpractice."). Finally, the Court notes that the licensure of orthotists was not even required by statute until January 1, 2006. *See* Tenn. Code Ann. § 63-3-201 (West 2010) (providing, in the historical and statutory notes accompanying the statute, that the "act shall take effect on January 1, 2006").[4]

---

[4] The Court notes that § 63-3-201 took effect "for promulgation of rules" on June 9, 2005. *See* Tenn. Code Ann. § 63-3-201 (West 2010) (historical and statutory notes).

Neither the applicable statutory and regulatory framework, nor the cases cited by the defendants suggesting that the applicable framework be interpreted broadly, can be construed to bring orthotists within the ambit of the Act. The Court now turns to consideration of the opinions of other courts that have addressed the issue.

**B.     Case Law**

*Gunter* set forth the "substantial relationship" framework for distinguishing between negligence claims and medical malpractice claims in Tennessee. The question of whether an orthotist is a health care provider under the meaning of the Act, however, is one of first impression in Tennessee. Case law on this precise question is thin, and neither party has offered Tennessee precedent that conclusively answers it. But a survey of case law from other jurisdictions demonstrates that most courts facing the same question have excluded orthotists from the category of health care providers subject to medical malpractice claims. *See, e.g.*, *Walcott v. Doctor's Choice Med., Inc.*, No. 05-121, 2008 WL 5071681, at *4 (D. V.I. Nov. 21, 2008) (finding that orthotic fitters were not "health care providers" within the meaning of the Virgin Islands Health Care Provider Malpractice Act because, while orthotic fitters were required to hold licenses, those licenses did not extend to the provision of health care or professional medical services); *Stalcup v. Orthotic & Prosthetic Lab, Inc.*, 989 S.W.2d 654, 660 (Mo. Ct. App. 1999) (holding that a laboratory that fitted and manufactured prosthetic limbs was not a health care provider because its services consisted of "aid[ing] in ambulation" rather than "restor[ing] soundness of the body or mind" or "affect[ing] the

10

presence or likelihood of disease"); *Payne v. Mudd*, 126 S.W.3d 787, 789-90 (Mo. Ct. App. 2004) (citing *Stalcup* with approval).[5]

The Court recognizes the existence of at least some contrary authority. In an opinion from the 1980s, the Supreme Court of Alabama found, with minimal analysis, that orthotists, "while not specifically mentioned in the Alabama Medical Liability Act," were nevertheless "health care providers who provide services as prescribed by physicians for their patients." *Tuscaloosa Orthopedic Appliance Co., Inc. v. Wyatt*, 460 So. 2d 156, 161 (Ala. 1984). Reasoning that, "although th[e] case d[id] not involve a physician, it d[id] involve a claim of negligence in the delivery of health care," the "usual rules relating to medical malpractice" were applicable, and required that the plaintiff put on expert testimony "to establish the proper procedure with regard to the fabrication and application of braces by an orthotist." *Id.* at 161.

The Court is reluctant, however, to adopt a definition of "health care provider" with such a potentially broad sweep, particularly given that the Tennessee Supreme Court already announced the "substantial relationship" test in *Gunter*. In addition, and as the Court has noted, the "need for expert testimony does not always signify medical malpractice." *Estate of Doe*, 958 S.W.2d at 123. In other words, the simple fact that expert testimony might be

---

[5]The Court also notes that the Tennessee Supreme Court has recently opined, in passing, on the role of orthotists, stating that "the relationship between orthotist and patient [does not] rise to the same level as that fiduciary relationship created by . . . [a] doctor-patient relationship." *Hanger Prosthetics & Orthotics E., Inc. v. Kitchens*, 280 S.W.3d 192, 196 (Tenn. 2008). The court found instead that "the orthotist role is more akin to providing goods and services." *Id.*

11

required in this case to determine whether Mr. Turner's actions fell below the applicable standard of care does not automatically transform the case from one of negligence or products liability into one of medical malpractice.

In sum, case law suggests that the relationship between the rendition of medical treatment in this case and the actions of Mr. Turner does not satisfy the substantiality requirement of *Gunter*. The Court now turns to consideration of the arguments in the parties' supplements to the motion for partial summary judgment.

### C. Supplemental Materials

Finally, the Court considers the parties' supplemental filings. Defendants had not deposed plaintiff's proferred expert, John Harris Reynolds, before filing their motion for partial summary judgment [Doc. 99]. After conducting their deposition of Mr. Reynolds, defendants submitted a supplement to their motion for partial summary judgment, contending that Mr. Reynolds's deposition testimony "demonstrates that orthotics is a medical science, practiced by trained healthcare professionals with specialized skill developed over years in the industry" [*Id.*]. In support of that argument, defendants point to Mr. Reynolds's (1) assent to defense counsel's use of the term "health care" to describe orthotics; (2) Mr. Reynolds's own use of the term in describing the statistical framework of the medical industry; (3) his description of the skills involved in the practice of orthotics, including the use of tests to evaluate patient needs, the use of specification codes for designing orthotic devices, and the education and training he underwent prior to becoming a certified orthotist; and (4) his "repeated references" to the use of "clinical judgment" in evaluating the needs

12

of patients [*Id.*]. On the basis of this testimony, defendants contend that the claims in this case must be brought under the Act.

Plaintiff disagrees and contends that Mr. Reynolds's mere assent to use of the term "health care" to describe orthotics does not transform this case into one of medical malpractice [Doc. 102]. She contends further that defendants "overplay" the significance of the codes used by orthotists, explaining that the primary purpose of these codes is the obtainment of pre-approval from insurance companies [*Id.*]. She argues finally that the basic role of an orthotist is to "design and provide braces to support limbs," responsibilities which do not "constitute the delivery of health care" for purposes of the Act [Doc. 102].

This Court is not persuaded by defendants' citation to Mr. Reynolds's deposition testimony that the Court's determination of an orthotist's status under the Act is incorrect. In the first place, as plaintiff points out, Mr. Reynolds's "characterizations are not determinative" of the issue [Doc. 102]. Nor do these characterizations come as a surprise to the Court. Much of the Court's discussion is informed by consideration of the duties of an orthotist and the training that precedes the carrying out of those duties. Mr. Reynolds's testimony, however favorably interpreted by defendants, cannot outweigh the statutory, regulatory, and precedential arguments already recited that exclude orthotists from coverage under the Act.

## IV. Conclusion

For the reasons just given, defendants' Motion for Partial Summary Judgment [Doc. 45] is hereby **DENIED**. Because the Court finds that the Act does not apply to plaintiff's

13

claims, it need not reach defendants' argument that those claims must satisfy the requirements of the Act in order to survive summary judgment.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

14

Case 3:08-cv-00011-TAV-CCS   Document 117   Filed 02/09/10   Page 14 of 14   PageID #: 1381